# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RICHARD BRETT FREDERKING, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. SA-17-CV-651-XR |
| CINCINNATI INSURANCE COMPANY, | § § § | |
| *Defendant*. | § § § | |

## ORDER

On this date, the Court considered the status of the above captioned-case. After careful consideration, the Court hereby GRANTS Defendant's Motion for Summary Judgment (Docket no. 19) and DENIES Plaintiff's Counter-Motion for Partial Summary Judgment (Docket no. 21).

## BACKGROUND

### I. Factual Background

On June 13, 2017, Plaintiff Richard Brett Frederking filed his Original Petition in the 408th Judicial District Court of Bexar County, Texas, bringing claims related to commercial insurance coverage for an automobile collision that was the subject of an underlying lawsuit. Docket no. 1-2. On July 18, 2017, Defendant Cincinnati Insurance Company ("Cincinnati") removed the case to this Court on the basis of diversity jurisdiction. Docket no. 1.

On September 14, 2014, Plaintiff allegedly suffered serious personal injuries in a motor vehicle collision that was caused by Carlos Xavier Sanchez. Docket no. 1-2 at 3. Sanchez was allegedly operating a motor vehicle owned by his employer, Advantage Plumbing Services

1

("Advantage"), at the time of the collision. *Id.* Advantage was the named insured under a Business Auto Coverage insurance policy issued by Defendant that was in full force and effect at the time of the collision. *Id.*

Plaintiff filed suit against Sanchez and Advantage in state court in the case *Richard Brett Frederking v. Carlos Xavier Sanchez and Advantage Plumbing Services, Ltd.*, No. 2015-CI-060614 (224th Dist. Ct., Bexar County, Tex. Apr. 10, 2015) (the "Underlying Lawsuit"). In that case, Plaintiff alleged Sanchez drove while intoxicated, failed to yield the right-of-way at an intersection, and struck Plaintiff's vehicle. Docket no. 21 at 8. Sanchez was arrested after the collision, taken to the Bexar County jail, later pled guilty to criminal charges of driving while intoxicated, and admitted his actions or inactions were the cause of the collision. Docket no. 19 at 15.

Because Plaintiff alleged that at the time of the wreck, Sanchez was operating a vehicle owned by and assigned to him by his employer, Advantage, Plaintiff sued both Sanchez and Advantage. Plaintiff brought claims for negligence, gross negligence, respondeat superior, and negligent entrustment. Defendant defended Sanchez and Advantage in the Underlying Lawsuit under a reservation of rights. The trial court granted Advantage partial summary judgment and dismissed the respondeat superior claim, finding that Sanchez did not act in the course and scope of his employment for Advantage at the time of the collision. The jury considered claims of negligence and gross negligence against Sanchez and a claim of negligent entrustment against Advantage. Docket no. 19-6. The jury found that Sanchez was negligent and that Advantage was negligent under the theory of negligent entrustment. *Id.* The jury also found that Sanchez was grossly negligent. *Id.* Plaintiff was awarded $137,025.00 in compensatory damages and interest,

jointly and severally, against Sanchez and Advantage. Docket no. 19-1. Plaintiff was further awarded $207,550.00 in punitive damages with interest against Sanchez. *Id.*

Defendant paid Plaintiff an amount of $153,086.94 in satisfaction of the full amount of the compensatory damages awarded against Advantage and Sanchez jointly and severally. Docket no. 19-6. Plaintiff then fully released Advantage from the judgment against it. *Id.* Plaintiff also partially released Sanchez from the compensatory portion of the judgment, but not from the punitive damages portion resulting from the finding of gross negligence. *Id.*

## II.  Procedural History

Plaintiff filed this action after he attempted to collect the award for punitive damages in the Underlying Lawsuit from Defendant. Plaintiff alleges he is a third-party beneficiary under the insurance policy, and although he has repeatedly demanded that Defendant pay him the punitive damages on behalf of Sanchez, Defendant refuses to pay that award. Docket no. 1-2 at 4. Plaintiff brings a claim for breach of contract against Defendant for failure to pay the punitive damages given the relevant insurance policy. *Id.* Plaintiff also seeks a declaration that Sanchez was operating a "covered vehicle" under the insurance policy with Advantage's permission at the time of the collision, that Sanchez was a permissive user and additional insured under the insurance policy, and that Defendant is contractually obligated to pay the punitive damage award from the Underlying Lawsuit. *Id.* at 5.

Defendant filed its answer denying that Sanchez had Advantage's permission to be operating the vehicle at the time of the collision and denying it is obligated to pay the punitive damages award. Docket no. 2. Defendant also asserted a counterclaim, seeking a declaration of

3

its obligations under the insurance policy to indemnify Sanchez in the Underlying Lawsuit. *Id.* at 7.

The insurance policy under which Defendant provided Advantage coverage has two relevant sections. First, the policy addresses Commercial Auto Coverage (the "Auto Policy"), which carries a per-occurrence limit of $1,000,000. Language in the Auto Policy speaks to who is covered and defines certain terms under the policy:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.
>
> . . .
>
> **SECTION II – LIABILITY COVERAGE**
>
> **A. Coverage**
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
>
> . . .
>
> **1. Who is an Insured?**
>
> The following are "insureds":
>
> **a.** You for any covered "auto".
>
> **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
> **(1)** The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
>
> **(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

        **(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

        **(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower of any of their "employees", while moving property to or from a covered "auto".

        **(5)** A partner (if you are a partnership); or a member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

    **c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

. . .

### SECTION V – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage."

. . .

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

. . .

**G.** "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought."

Docket no. 19-1 at 73–83.

      Second, the policy addresses Commercial Umbrella Liability Coverage (the "Umbrella Policy"), which carries an each occurrence limit of $2,000,000. Language in the Umbrella Policy also speaks to who is covered and defines certain terms under the policy:

    Various provisions in this policy restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

5

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V – DEFINITIONS**.

**SECTION I – COVERAGE**

**A.** Insuring Agreement

   **1.** We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies:

   **a.** Which is in excess of the "underlying insurance"; or

   **b.** Which is either excluded or not insured by "underlying insurance".

   **2.** This insurance applies to "bodily injury", "personal and advertising injury" or "property damage" only if:

   **a.** The "bodily injury", "personal and advertising injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

   **b.** The "bodily injury" or "property damage" occurs during the policy period shown in the Declarations;

. . .

**C.** Defense and Supplementary Payments

   **1.** We will have the right and duty to defend the insured against any "suit" seeking damages because of "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies. We will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "personal or advertising injury" or "property damage" to

which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result when:

    **a.** The applicable limits of the "underlying insurance" and any other insurance have been exhausted by payment of claims; or

    **b.** Damages are sought for "bodily injury", "personal and advertising injury" or "property damage" which are not covered by "underlying insurance" or other insurance.

. . .

**SECTION II – WHO IS AN INSURED**

. . .

**2.** Only with respect to liability arising out of the ownership, maintenance, occupancy or use of an "auto":

    **a.** You are insured.

    **b.** Anyone else while using with your permission an "auto" you own, hire or borrow is also an insured . . .

. . .

**SECTION V – DEFINITIONS**

. . .

**4.** "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

. . .

**16.** "Occurrence" means:

a. An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage" . . .

Docket no. 19-1 at 23–42.

On December 14, 2017, Defendant filed its motion for summary judgment arguing it is entitled to judgment as a matter of law that, under the insurance policy, it has no duty to indemnify Sanchez in the Underlying Lawsuit for the remaining punitive damages. Docket no. 19. On January 12, 2018, Plaintiff filed his response and Counter-Motion for Summary Judgment arguing that, as a matter of law, Defendant does have a duty to indemnify Sanchez for the punitive damages in the Underlying Lawsuit and that there is a genuine dispute of material fact as to whether Sanchez was operating Advantage's vehicle with Advantage's permission at the time of the collision. Docket no. 21.

### III. Legal Standard

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury

to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

**IV.	Application**

Defendant argues that it is entitled to summary judgment because (1) the insurance policy does not afford coverage for Sanchez's gross negligence because that conduct does not constitute an accident or occurrence to trigger coverage under the Auto and Umbrella Policies, (2) punitive damages are not insurable under the Auto and Umbrella Policies as a matter of Texas public policy, and (3) Sanchez was not an "insured" under the Auto and Umbrella Policies when he operated the vehicle without Advantage's permission. Docket no. 19.

Plaintiff argues he is entitled to summary judgment because (1) Sanchez's conduct was an insurable accident or occurrence under the Auto and Umbrella Policies, and (2) the punitive damage award against Sanchez is insurable under Texas public policy. Docket no. 21. Plaintiff further argues that there is a genuine dispute of material fact that Sanchez was operating Advantage's vehicle with Advantage's permission at the time of the collision. *Id.*

Under Texas law, an insurer's duty to indemnify requires it to "pay all covered claims and judgments against an insured." *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011) (quoting *D.R. Horton–Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)). The duty to indemnify is "triggered by the actual facts establishing liability in the

9

underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the terms of the policy." *Id.* An insurer's duty to indemnify "generally cannot be ascertained until the completion of litigation, when liability is established, if at all." *Id.*

Interpretation of a provision in an insurance policy is a question of law. *See Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003). In Texas, courts engage in a two-step analysis to determine whether punitive damages for gross negligence are insurable. First, a court must decide "whether the plain language of the policy covers the exemplary damages sought in the underlying suit against the insured." *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 655 (Tex. 2008). In this case there is no specific exclusion that denies coverage for awards for punitive or exemplary damages.

Second, if the court finds that the policy provides coverage, the court must determine "whether the public policy of Texas allows or prohibits coverage in the circumstances of the underlying suit" by first looking "to express statutory provisions regarding the insurability of exemplary damages to determine whether the Legislature has made a policy decision." *Id.* Absent an explicit policy decision by the Legislature, a court will consider the general public policies of Texas. *Id.*

Assuming Sanchez was an "insured" under the Auto and Umbrella Policies at the time of the collision, the Court must determine if there is a genuine dispute of material fact as to whether these Policies cover the punitive damages awarded for the finding of gross negligence in the Underlying Lawsuit. The Auto Policy provides coverage for "bodily injury" or "property damage" caused by an "accident" and resulting from the ownership, maintenance, or use of a covered "auto." An "accident" includes continuous or repeated exposure to the same conditions

10

that result in "bodily injury" or "property damage." The Umbrella Policy states Defendant will pay, on behalf of the insured, the "ultimate net loss" that the insured is legally obligated to pay as damages for "bodily injury," "personal and advertising injury," or "property damage" to which the policy applies that is either in excess of the "underlying insurance" or that is either excluded or not insured by the "underlying insurance." But the Umbrella Policy only applies if the injury or damage is caused by an "occurrence" that takes place in the "coverage territory" and during the policy period. The Umbrella Policy defines an "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in 'bodily injury' or 'property damage.'" Thus, the Court must determine if Sanchez's actions that were the basis of the gross negligence finding in the Underlying Lawsuit are considered an "accident" and/or "occurrence" under the Policies' language.

Under the Policies' language, "occurrence" is defined, in part, as an accident. "Accident," however, is not otherwise defined in the policy, other than as including continuous or repeated exposure to the same conditions that result in "bodily injury" or "property damage." Terms not defined in a policy are given their generally accepted or commonly understood meaning. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007) (citing *W. Reserve Life Ins. v. Meadows*, 261 S.W.2d 554, 557 (Tex. 1953)). "An accident is generally understood to be a fortuitous, unexpected, and unintended event." *Id.* "[A] deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly." *Id.*; *see also Harken Expl. Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 473 (5th Cir. 2001) ("if the act is deliberately taken, performed negligently, and the effect is not the intended or expected result had the deliberate act

11

been performed non-negligently, there is an accident"). But "a claim does not involve an accident or occurrence when . . . circumstances confirm that the resulting damage was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not." *Id.* at 9 (citing *Mid-Century Ins. Co. of Texas, a Div. of Farmers Ins. Grp. of Companies v. Lindsey*, 997 S.W.2d 153, 155 (Tex. 1999)). Citing Texas law, the Fifth Circuit has held that a deliberate act is not an accident if "(1) the resulting damage was 'highly probable' because it was 'the natural and expected result of the insured's actions,' (2) "the insured intended the injury," or (3) the insured's acts constitute an intentional tort, in which case, the insured is presumed to have intended the injury." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 532 F.3d 398, 402 (5th Cir. 2008) (citing *Lamar Homes*, 242 S.W.3d at 8–9).

In the Underlying Lawsuit, there was no finding that Sanchez intended the injury or that his actions constituted an intentional tort. Defendant argues, however, that the resulting damage from the collision was "highly probable" because a car collision is "the natural and expected result" following the deliberate act of becoming intoxicated and operating a vehicle. Plaintiff argues that Sanchez's conduct constitutes an "accident" under Texas law because the collision that resulted from Sanchez's conduct was not intended or expected. Sanchez was found grossly negligent for driving while intoxicated at the time of the collision. Under Texas law, "gross negligence" is defined as an act or omission: "(A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." TEX. CIV. PRAC. & REM. CODE

§ 41.001(11). In the Underlying Lawsuit, the jury was asked if Sanchez acted with gross negligence, with instructions that matched the statutory definition. Docket no. 19-6 at 10. The jury answered in the affirmative. *Id.*

In *Trinity Universal Ins. Co. v. Cowan*, the Supreme Court of Texas considered principles similar to those in this case. A photo lab clerk received a roll of film containing revealing pictures of the plaintiff, made extra prints, took them home, and later showed them to friends. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 820 (Tex. 1997). The clerk left the photos with one friend whom he told to throw the photos away, but that friend showed the photos to another person who was a friend of the plaintiff. *Id.* at 820–21. The plaintiff sued the clerk for negligence and gross negligence. *Id.* at 821. The clerk's homeowners' insurance carrier defended the clerk under a reservation of rights, and the clerk was found negligent and grossly negligent. *Id.* On appeal, the insurance provider argued that the clerk's conduct was not a covered "occurrence under the policy." *Id.* Similar to the present case, "occurrence" was defined as an "accident" under the insurance policy, and "accident" was not defined. *Id.* at 826.

The *Cowan* court found that the clerk intentionally copied the plaintiff's photographs and showed them to friends, even though the clerk testified that he did not intend for the plaintiff to learn of his actions. *Id.* The court held that the clerk's conduct was not an "accident" because "[h]e did exactly what he intended to do when he purposefully copied the photographs and showed them to his friends," and the fact that he didn't intend the plaintiff to learn of his actions "is of no consequence" to that determination. *Id.* at 827–28. The court held that the plaintiff's invasion of privacy was of a type that "ordinarily follow[s]" from the clerk's conduct and the resulting injuries could be "reasonably anticipated from the use of the means, or an effect" that

the clerk could "be charged with . . . producing." *Id.* at 828 (quoting *Republic Nat. Life Ins. Co. v. Heyward*, 536 S.W.2d 549, 555–56 (Tex. 1976)).

Similarly, in *Wessinger v. Fire Ins. Exchange*, the court held that after the plaintiff voluntarily became intoxicated, deliberately repeatedly hit the victim in the head, and severely injured the victim's eye, the conduct did not constitute an "accident" under the insurance policy. *Wessinger v. Fire Ins. Exch.*, 949 S.W.2d 834, 841 (Tex. App.—Dallas 1997, no writ). The court stated that, although being intoxicated may explain why the plaintiff violently attacked the victim, "it does not change the fact that punching or striking [the victim] was a voluntary and intentional act and thus not accidental." *Id.* The court further held that the victim's eye injuries following the plaintiff striking him in the head, regardless of how serious the injuries actually were, may be reasonably anticipated, and ought to be expected, such that the conduct was not a covered accident or occurrence. *Id.*

Similar to the findings in *Cowan* and *Wessinger*, Sanchez's collision with Plaintiff and Plaintiff's resulting injuries were the natural and expected result from a driver operating a vehicle while intoxicated. Just as the clerk in *Cowan* intended to make copies of the photographs and the plaintiff in *Wessinger* intended to hit the victim in the head, Sanchez intentionally became intoxicated and operated a vehicle. Although Sanchez may not have intended to get in an automobile collision or cause injuries to Plaintiff, similar to how an invasion of privacy ordinarily follows from making unauthorized copies of photographs and an eye injury ordinarily follows from striking someone's head, a car collision and injuries to another driver ordinarily follow from someone driving while intoxicated. In other words, the collision and injuries were "highly probable." .

14

Plaintiff attempts to distinguish *Cowan* and *Wessinger* from this case. Plaintiff argues that in *Cowan*, the clerk intended the result, whereas Sanchez did not intentionally accelerate his car with the intent to strike Plaintiff. The *Cowan* court, however, only held that the clerk purposefully copied the photographs and showed them to his friends. The court then found that the invasion of the plaintiff's privacy ordinarily followed the clerk's intentional acts such that the conduct was not an "accident." *Cowan*, 945 S.W.2d at 827–28; *see also Admiral Ins. Co. v. Little Big Inch Pipeline Co.*, 523 F. Supp. 2d 524, 536 (W.D. Tex. 2007) (finding an "accident" where the insured took actions with the negligent belief they did so with proper permission, unlike in *Cowan* where there was no "accident" because the mistake was as to ascertaining the consequences or results of the intentional conduct). Sanchez need not have intended to accelerate his car with the intent to strike Plaintiff for this Court to find such a result ordinarily follows Sanchez's intentional act of driving while intoxicated. Plaintiff makes a similar argument with respect to *Wessinger*. As stated above, however, the Court need not find that Sanchez intended the specific result of striking Plaintiff's vehicle. Even if the collision and injury were unexpected and unintended, the results of Sanchez driving while intoxicated are not caused by an "accident." *Wessinger*, 949 S.W.2d at 837.

Further, courts have found that automobile insurance policies similar to the one in this case do not cover punitive damages. In *Fairfield Insurance Co. v. Stephens Martin Paving, LP*, Chief Justice Hecht stated that "[s]tandard form personal automobile policies do not state specifically whether punitive damages are covered, and while two courts have concluded that punitive damages are damages for bodily injury covered by automobile policies, that position has been uniformly rejected in the context of uninsured and underinsured motorist coverage and is

therefore dubious at best." *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 683 (Tex. 2008) (Hecht, J., concurring). In *Westchester Fire Insurance Co. v. Admiral Insurance Co.*, the court allowed coverage for punitive damages because, although one applicable portion of the relevant policy "limit[ed] coverage to bodily injury arising out of an occurrence" similar to the policy in the present case, a second applicable portion of the policy did not limit coverage to only an "occurrence." *Westchester Fire Ins. Co. v. Admiral Ins. Co.*, 152 S.W.3d 172, 181 (Tex. App.—Fort Worth 2004, pet. denied). Thus, the court held the punitive damage award for gross negligence did trigger coverage under the insurance policy because one relevant portion of the policy did not limit coverage to an "occurrence." *Id.* As discussed above, the Policies in this case, however, both restrict coverage to an "accident" or "occurrence."

Plaintiff argues that because the Policies state that Defendant is obligated to pay "all sums" an insured must pay as damages due to bodily injury, Defendants must indemnify Sanchez for the punitive damages. This argument, however, does not overcome the fact that under the Policies' language, Defendant is only required to indemnify an "insured" for an "accident" or "occurrence."

Sanchez's conduct of driving while intoxicated, found to be grossly negligent in the Underlying Lawsuit, resulted in a car collision with Plaintiff in which Plaintiff was injured. The collision was the natural and expected result from Sanchez's intentional conduct of driving while intoxicated, and Plaintiff's resulting injuries were highly probable. *See Commercial Underwriters Ins. Co. v. Royal Surplus Lines Ins. Co.*, 345 F. Supp. 2d 652, 663 (S.D. Tex. 2004), *aff'd sub nom. N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552 (5th Cir. 2008) ("If a bodily injury would not result but for the intentional conduct of the

insureds, claims of negligence and gross negligence emanating from the same conduct are excluded" from coverage.). A car collision with another driver is the "natural and probable consequence of the means which produce it"—the means here being Sanchez driving while intoxicated—and that collision and Plaintiff's injuries can be "reasonably anticipated from the use of the means." *Heyward*, 536 S.W.2d at 555–56. This is further supported by the fact that in the Underlying Lawsuit, the jury found Sanchez acted with gross negligence, which required the jury to find that Sanchez "had actual, subjective awareness of the risk involved, but nevertheless proceed[ed] with conscious indifference to the rights, safety, or welfare of others." TEX. CIV. PRAC. & REM. CODE § 41.001(11). Under Texas law, Sanchez's conduct, which was found to be grossly negligent in the Underlying Lawsuit, was not an "accident" or "occurrence" to trigger coverage under the Policies.

Accordingly, there is no genuine dispute of fact that the finding that Sanchez was grossly negligent in the Underlying Lawsuit is not an "accident" or "occurrence" under the Auto or Umbrella Policies. Defendant is entitled to summary judgment that it has no duty to indemnify Sanchez for the punitive damages awarded from the finding of gross negligence. The Court need not analyze the arguments whether insurance coverage for punitive damages awarded violate Texas public policy or whether Sanchez was an "insured" under the Policies.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion for Summary Judgment (Docket no. 19) and DENIES Plaintiff's Counter-Motion for Partial Summary Judgment (Docket no. 21). Plaintiff's claims are hereby DISMISSED WITH PREJUDICE. The Clerk is directed to issue a Judgment in favor of Defendant, and that Plaintiff takes nothing on its

claims. Defendant may submit its Bill of Costs within 14 days in the form directed by the Clerk should it desire to pursue these costs.

It is so ORDERED.

SIGNED this 27th day of March, 2018.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE