# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| RICHARD BRETT FREDERKING, *Plaintiff*, <br><br> v. <br><br> CINCINNATI INSURANCE COMPANY, *Defendant*. | SA-17-CV-00651-XR |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

On this day, the Court considered Defendant Cincinnati Insurance Company's ("Cincinnati") Second Motion for Summary Judgment (ECF No. 42), Plaintiff Richard Brett Frederking's ("Frederking") Response (ECF No. 43), and Cincinnati's Reply (ECF No. 44). After careful consideration, the Court will **GRANT** the motion.

## BACKGROUND

The facts of this case are largely undisputed.[1] Frederking was previously awarded $207,550.00 in punitive damages in a separate lawsuit arising out of an auto collision caused by a drunk driver. The sole question in this suit is whether Cincinnati is obligated to indemnify the drunk driver under an insurance policy between Cincinnati and the driver's employer.

On September 14, 2014, Frederking suffered serious personal injuries in a motor vehicle collision caused by Carlos Xavier Sanchez ("Sanchez"). Sanchez later pled guilty to criminal charges of driving while intoxicated, admitting his actions or inactions were the cause of the collision—his fifth DWI conviction. At the time of the collision, Sanchez was driving a motor

---

[1] *See* Pl.'s Resp. to Def.'s Second Mot. for Summ. J. 1, ECF No. 43 (hereinafter "Pl.'s Resp.") (admitting "many of the underlying facts are undeniable; the parties' dispute focuses more on what legal effect those facts should have" and that "Cincinnati's description of the underlying facts broadly captures the nature of this case.").

1

vehicle owned by his employer, Advantage Plumbing Services ("Advantage").  The vehicle was assigned to Sanchez in 2014 for work on a project in Seguin, Texas.  At the time the vehicle was assigned to him, Sanchez told his supervisor that he had a valid driver's license; in fact, Sanchez's driver's license was suspended.  Advantage did not request Sanchez's driver's license or driver's record and had no knowledge of his DWI history before the collision with Frederking.  Advantage was the named insured under an insurance policy issued by Cincinnati ("the Policy") that was in full force and effect at the time of the collision.

Frederking filed suit against Sanchez and Advantage in Texas state court ("the Underlying Lawsuit").  Frederking brought claims against Sanchez for negligence and gross negligence, and against Advantage for respondeat superior and negligent entrustment.  Cincinnati defended both Sanchez and Advantage in the Underlying Lawsuit under a reservation of rights.  The trial court granted Advantage partial summary judgment, dismissing the respondeat superior claim after finding that Sanchez did not act in the course and scope of his employment for Advantage at the time of the collision.  The jury found Sanchez was negligent and grossly negligent, and they found Advantage liable for negligent entrustment.  Frederking was awarded $137,025.00 in compensatory damages and interest, jointly and severally against Sanchez and Advantage.  Frederking was further awarded $207,550.00 in punitive damages with interest against Sanchez.

Cincinnati paid Frederking $153,086.94 in satisfaction of the full amount of compensatory damages awarded against Sanchez and Advantage jointly and severally.  As a result, Frederking fully released Advantage from the judgment against it and partially released Sanchez—from the compensatory portion of the judgment, but not from the punitive damages portion.  Frederking then attempted to collect the punitive damages award from Cincinnati under the Policy, but Cincinnati refused to make payment.  Frederking brought the present lawsuit as a third-party

2

beneficiary under the Policy, alleging breach of contract and seeking a declaration that Cincinnati was obligated to pay the punitive damages award.

This Court previously granted Cincinnati's first motion for summary judgment (ECF No. 19) on an argument not urged here: that the collision caused by Sanchez's grossly negligent decision to drink and drive was not an "accident" and/or "occurrence" under the Policy. *See* ECF No. 25. The Fifth Circuit disagreed and remanded the case, at which point Cincinnati again moved for summary judgment on the two remaining grounds discussed herein. *See Frederking v. Cincinnati Ins. Co.*, 929 F.3d 195, 200 (5th Cir. 2019).

Cincinnati now moves for summary judgment, arguing that (1) Sanchez was not an "insured" under the Policy at the time of the collision, and even if he was (2) Texas public policy precludes Cincinnati from indemnifying Sanchez for the punitive damages award. Cincinnati seeks a complete dismissal of Frederking's claims and a declaration that (a) punitive damages are not insurable in the context of the Underlying Lawsuit as a matter of Texas public policy, (b) Sanchez was not an "insured" under the Policy, and (c) Frederking is not entitled to indemnity under the terms of the Policy for the punitive damages awarded against Sanchez in the underlying suit.

## DISCUSSION

### I. Summary Judgment Standard

A court will grant summary judgment if the record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adams v. Travelers Indem.*

*Co.*, 465 F.3d 156, 163 (5th Cir. 2006). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and designate competent summary judgment evidence "showing that there is a genuine issue for trial." *Adams*, 465 F.3d at 164; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). In ruling on summary judgment, a court must view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in its favor. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

## II. Analysis

Cincinnati puts forward two independent grounds for summary judgment:

1) punitive damages are *not* insurable under the [Policy] because, as a matter of Texas public policy, Sanchez alone is responsible for the punitive burdens of his grossly negligent acts; and/or

2) Sanchez is *not* entitled to coverage under the [Policy] because the uncontroverted summary judgment evidence conclusively establishes he did not have permission to use the Advantage vehicle at the time, place where, and in the manner in which it was being used when the Collision occurred, as required for Sanchez to be an "insured" under the terms and conditions of the [Policy].

Def.'s Second Mot. for Summ. J. 8, ECF No. 42 (hereinafter, "Cincinnati MSJ"). In response, Frederking argues that (1) it is contrary to Texas' public policy to excuse Cincinnati from its freely negotiated contractual obligations, and (2) a reasonable jury could determine that Sanchez was an omnibus insured under the Policy at the time of the Collision. Pl.'s Resp. 14, 3. Frederking urges that these arguments should actually be considered in reverse order under the Texas Supreme Court decision in *Fairfield*, which laid out a two-step analysis for determining the insurability of exemplary damages for gross negligence: "First, we decide whether the plain language of the

policy covers the exemplary damages sought… Second, if we conclude that the policy provides coverage, we determine whether the public policy of Texas allows or prohibits coverage in the circumstances of the underlying suit." *Fairfield Ins. Co. v. Stephens Martin Paving, L.P.*, 246 S.W.3d 653, 655 (Tex. 2008).

    A.    <u>Was Sanchez an insured under the Policy?</u>

Cincinnati argues that it is not obligated to indemnify the exemplary damages award against Sanchez under the Policy because Sanchez was not an "insured." Cincinnati MSJ 19. Advantage was the named insured, and the Policy also covered "omnibus insureds," which included "[Advantage] for any covered 'auto'" and "[a]nyone else while using with [Advantage's] permission a covered 'auto' you own, hire or borrow." *Id.* at 20. Therefore, according to Cincinnati, if Sanchez was not a "permissive user" at the time of the collision with Frederking, he is not insured under the Policy. *Id.* In sum, Cincinnati argues that Sanchez's use of the vehicle "on a purely personal mission, late at night, in San Antonio, while intoxicated" puts him beyond the scope of coverage under the Policy.

Specifically, Cincinnati urges three reasons Sanchez was not a permissive user: the undisputed evidence establishes that (1) Sanchez did not have express permission to use the vehicle at the time, place, and in the manner in which it was used; (2) Sanchez did not have implied permission to use the vehicle at the time, place, and in the manner in which it was used; and (3) even if Sanchez initially did have permission, Sanchez's actual use of the vehicle was a material deviation from any permission Sanchez might have had. *Id.* at 24, 26, 27. Frederking responds that (1) there is material evidence that Sanchez had express, plenary authority to use Advantage's vehicle as his personal vehicle; (2) there is copious evidence of implied permission so as to raise

5

a genuine fact dispute; and (3) the issue of whether a deviation revoked Sanchez's permission in this case is, at best, one that the jury must decide. Pl.'s Resp. 6–14.

Frederking has raised a genuine fact dispute on one or more of these arguments, and accordingly summary judgment is not appropriate on this basis. Accordingly, the Court now turns to Defendant's second basis for summary judgment: the public policy issue.[2]

      B.      <u>Does Texas public policy prohibit the coverage of exemplary damages in this case?</u>

The parties here acknowledge that the Court's consideration of the public policy question is governed by the framework laid out in *Fairfield*. Cincinnati MSJ 13; Pl.'s Resp. 3. In that case, responding to a question certified from the Fifth Circuit, the Texas Supreme Court answered that Texas public policy does <u>not</u> prohibit insurance coverage of exemplary damages for gross negligence in workers' compensation cases. *Fairfield*, 246 S.W.3d at 670. The court's reasoning relied on the expressed intent of the legislature in workers' compensation cases. *Id.* at 660. Outside of that specific context, the court also laid out "some of the considerations relevant to determining whether Texas public policy prohibits insurance coverage of exemplary damages…in the absence of a clear legislative policy decision." *Id.* at 660. According to the *Fairfield* court, in such a case "whether a promise or agreement will be unenforceable on public policy grounds will be determined by weighing the interest in enforcing agreements versus the public policy interest against such enforcement." *Id.* at 663.

---

[2] Frederking urges that *Fairfield*'s two-step analysis "suggests the Court should decline to address any public policy arguments until a jury finds there is indeed coverage under the Policy as-written [sic]." Pl.'s Resp. 14. There is no support for this proposition. The *Fairfield* court itself presumed coverage and proceeded to analyze the public policy question as a matter of law. *See Fairfield*, 246 S.W.3d at 656 (presuming that policy language at issue covered the exemplary damages sought); *see also Am. Intern. Specialty Lines Ins. Co. v. Res-Care Inc.*, 529 F.3d 649, 661 (5th Cir. 2008) (same); *Minter v. Great Am. Ins. Co.*, 394 F. App'x 47, 49 (5th Cir. 2010) (stating that whether Texas public policy permits the insurability of an exemplary damages award is a question of law). This Court will do the same and presume that Sanchez was an insured.

In weighing those interests, "[o]n one side of the scale is Texas' general policy favoring freedom of contract…. On the other side of the scale is the extent to which the agreement frustrates important public policy." *Id.* at 663–64. Although Texas' strong public policy in favor of preserving freedom of contract is well-recognized, "freedom of contract is not unbounded," and "parties have the right to contract as they see fit <u>as long as</u> their agreement does not violate the law or public policy." *Id.* at 664 (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129, n.11 (Tex. 2004)). Accordingly, courts determining whether public policy prohibits insurance coverage of exemplary damages for gross negligence "should consider the purpose of exemplary damages." *Fairfield*, 246 S.W.3d at 666.

In Texas, "exemplary damage awards serve to punish the wrongdoer and set 'a public example to prevent the repetition of the act.'" *Id.* (citing *Cole v. Tucker*, 6 Tex. 266, 268 (1851)). And as the *Fairfield* court recognized, Texas public policy has more recently been to "downplay the role of deterrence and focus squarely on the punitive aspect" of exemplary damages. *Fairfield*, 246 S.W.3d at 666 (citing TEX. CIV. PRAC. & REM. CODE § 41.001(5) which defines exemplary damages to mean "any damages awarded as a penalty or by way of punishment but not for compensatory purpose.") It is also Texas policy that "the punishment imposed through exemplary damages is to be directed at the wrongdoer." *Fairfield*, 246 S.W.3d at 667 (citing TEX. CIV. PRAC. & REM. CODE § 41.006 which provides in actions involving two or more defendants, "an award of exemplary damages must be specific as to a defendant, and each defendant is liable only for the amount of the award made against that defendant.")

The *Fairfield* court considered several types of cases where Texas public policy either allows or prohibits insurance coverage of exemplary damages:

    A. <u>Uninsured/underinsured motorist policies</u>: the court acknowledged that Texas courts have "uniformly rejected as against public policy coverage under uninsured or underinsured

motorist policies when the insured seeks to recover from his own insurer exemplary damages assessed against a third-party tortfeasor." *Fairfield*, 246 S.W.3d at 668. "In that situation, the burden of the exemplary damages would fall entirely on the insurer and its policyholders, not on the tortfeasor, thereby entirely defeating the purpose of such damages." *Id.*

B. <u>Damages assessed against an employer for the conduct of its employees or agents</u>: in two cases the *Fairfield* court examined, insurance coverage of exemplary damages was allowed where a large corporation was held liable for punitive damages based on the wrongful conduct of one or a few employees. In these cases, "the purpose of exemplary damages may be achieved by permitting coverage so as not to penalize many for the wrongful act of one." *Id.* at 670.

C. <u>Extreme circumstances</u>: finally, the court warned that "strong public policies may compel a serious analysis into whether a court may legitimately bar contracts of insurance for extreme and avoidable conduct that causes injury." *Id.* The court pointed to examples such as "damages caused by intentional conduct" or where coverage "may encourage reckless conduct" or "completely eviscerate the punitive purpose behind awarding exemplary damages." *Id.*

The *Fairfield* court did not opine on the specific situation before us: whether Texas public policy prohibits an employer's insurance policy from covering exemplary damages for gross negligence of an employee who caused an injury while driving drunk. The Fifth Circuit, though, addressed these exact facts in *Minter v. Great Am. Ins. Co.*, 394 F. App'x 47 (5th Cir. 2010). In *Minter*, a drunk driver in his employer's vehicle caused damages to another motorist. *Id.* at 48–49. The driver pled guilty to DWI in connection with the collision—his third DWI conviction. *Id.* at 49. A jury awarded actual and exemplary damages against the driver, and the injured motorist sought to recover from the driver's employer's insurer. *Id.* The district court entered judgment against the insurer, including exemplary damages, holding that the "ongoing, systemic, extreme circumstances" necessary for an insurer to avoid indemnifying an insured's obligation to pay exemplary damages were not present in that case. *Id.* The Fifth Circuit reversed, holding that Texas public policy prohibited insurance coverage of the exemplary damages award. *Id.* at 50. The court explained:

> It is unnecessary to announce a broad rule in order to decide this case. The application of *Fairfield* in this case is straightforward. This accident represented [the driver's] *third DWI conviction*. [The driver], then, was a repeat offender who clearly had not learned his lesson. By his own admission, he knew he was a "danger to the folks on the highway" driving around drunk in an 18-wheeler and that it was "possible someone might get hurt." Under the facts of this case, Texas public policy prohibits [the employer's insurer] from indemnifying the exemplary damages award here. Any exemplary damages must therefore be recovered from [the driver] himself and not from [the insurer].

*Id.* (emphasis in original). Frederking argues in his briefing that the unpublished opinion in *Minter* is not binding precedent on this Court, which is true. It is nevertheless persuasive and instructive on how the Fifth Circuit has applied the *Fairfield* framework to facts like the ones now before the Court, particularly in the absence of other guidance from either the Fifth Circuit or Texas courts. Indeed, Frederking fails to point the Court to any contrary precedent—that is, he has failed to point to any case at all, be it precedential or persuasive, holding that Texas public policy <u>allows</u> an employer's insurer to cover exemplary damages awarded for an employee's gross negligence while driving drunk.

Applying the *Fairfield* considerations, the Court finds that in this case Texas public policy prohibits the indemnification of the exemplary damages award against Sanchez for his own gross negligence. As in *Minter*, Sanchez was a repeat DWI offender who pled guilty to DWI as a result of the collision and who admitted his own actions or inactions caused Frederking's injuries. A jury found that Sanchez's "extreme and avoidable" conduct warranted the imposition of exemplary damages against Sanchez alone, not his employer. *Fairfield*, 246 S.W.3d at 670. Allowing Sanchez's employer's insurance policy to cover those damages would allow "the burden of the exemplary damages [to] fall entirely on the insurer and its policyholders, not on the tortfeasor" and would not serve either the punitive or deterrence-related purposes of exemplary damages under Texas law. *Id.* at 668. In fact, allowing Sanchez to be insured against the consequences of his

9

own actions would frustrate the important public policy of punishing and deterring drivers who cause injury to others after choosing to drink and drive. As Cincinnati points out, Sanchez did not negotiate the insurance contract with Cincinnati, Advantage did; Sanchez did not pay the premium for the coverage afforded by the Policy, Advantage did. And Cincinnati did in fact pay Sanchez and Advantage's portion of the damages inasmuch as they were compensatory of Frederking's injuries. But the exemplary damages awarded against Sanchez in order to punish and deter his own grossly negligent conduct must be borne by Sanchez alone, not by his employer's insurer.

## CONCLUSION

In this case, Texas public policy precludes Cincinnati from indemnifying Sanchez for the exemplary damages awarded against him for his own grossly negligent conduct. Therefore, the Court will **GRANT** Cincinnati's Second Motion for Summary Judgment (ECF No. 42) as stated herein. Frederking's claims against Cincinnati are **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to enter judgment in favor of Cincinnati and to **CLOSE** this case.

It is so **ORDERED**.

**SIGNED** this 20th day of March, 2020.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE