IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| RICHARD BRETT FREDERKING, *Plaintiff*, <br><br> v. <br><br> CINCINNATI INSURANCE COMPANY, *Defendant*. | § § § § § § § § § <br><br> SA-17-CV-00651-XR |

## ORDER

On this date, the Court considered Plaintiff Richard Brett Frederking's ("Frederking") Motion for Reconsideration (ECF No. 46), Defendant Cincinnati Insurance Company's ("Cincinnati") Response (ECF No. 47), and Frederking's Reply (ECF No. 48). For the reasons stated herein, Frederking's motion is **DENIED**.

## BACKGROUND

This case arises out of a dispute surrounding a punitive damages award in favor of Frederking. In a separate lawsuit ("the Underlying Lawsuit") arising out of injuries Frederking suffered in an auto collision caused by a drunk driver, Carlos Xavier Sanchez ("Sanchez"), Frederking was awarded $137,025.00 in compensatory damages against Sanchez and his employer, Advantage Plumbing Services ("Advantage"). Frederking was awarded an additional $207,550.00 in punitive damages against Sanchez alone.[1] Cincinnati, who insured Advantage at the time of the collision, defended both Sanchez and Advantage in the Underlying Lawsuit under

---

[1] In the Underlying Lawsuit, Frederking brought claims in Texas state court against Sanchez for negligence and gross negligence, and against Advantage for respondeat superior and negligent entrustment. The trial court granted Advantage partial summary judgment, dismissing the respondeat superior claim after finding that Sanchez did not act in the course and scope of his employment for Advantage at the time of the collision. The jury found for Frederking on the remaining claims.

1

a reservation of rights, and when Frederking prevailed Cincinnati paid to him $153,086.94 in satisfaction of the full amount of the compensatory damages award. Cincinnati refused, however, to pay the punitive damages award.

Frederking brought the present lawsuit against Cincinnati, alleging breach of contract and seeking a declaration that Cincinnati was obligated to pay the punitive damages award. The sole question presented in this case, then, is whether Cincinnati is obligated to indemnify Sanchez for his own grossly negligent conduct under the insurance policy between Cincinnati and Advantage ("the Policy"). On March 27, 2018, the Court granted Cincinnati's first motion for summary judgment after finding the collision caused by Sanchez's grossly negligent decision to drink and drive was not an "accident" and/or "occurrence" under the Policy. ECF No. 25. The Fifth Circuit ultimately disagreed, and reversed and remanded the case, *Frederking v. Cincinnati Ins. Co.*, 929 F.3d 195, 200 (5th Cir. 2019), at which point Cincinnati again moved for summary judgment on two other grounds: that (1) Sanchez was not an "insured" under the Policy at the time of the collision, and even if he was (2) Texas public policy precludes Cincinnati from indemnifying Sanchez for the punitive damages award. ECF No. 42.

On March 20, 2020, the Court granted summary judgment in favor of Cincinnati, holding that Texas public policy precludes Cincinnati from indemnifying Sanchez for the exemplary damages awarded against him for his own grossly negligent conduct. ECF No. 45. In doing so, the Court examined the framework laid out by the Texas Supreme Court in *Fairfield Ins. Co. v. Stephens Martin Paving, L.P.*, 246 S.W.3d 653 (Tex. 2008), and the application of that case by the Fifth Circuit in *Minter v. Great Am. Ins. Co.*, 394 F. App'x 47 (5th Cir. 2010). ECF No. 45 at 6–9. In granting summary judgment for Cincinnati, the Court reasoned that:

> Applying the *Fairfield* considerations, the Court finds that in this case Texas public policy prohibits the indemnification of the exemplary damages award against

>   Sanchez for his own gross negligence. As in *Minter*, Sanchez was a repeat DWI offender who pled guilty to DWI as a result of the collision and who admitted his own actions or inactions caused Frederking's injuries. A jury found that Sanchez's "extreme and avoidable" conduct warranted the imposition of exemplary damages against Sanchez alone, not his employer. *Fairfield*, 246 S.W.3d at 670. Allowing Sanchez's employer's insurance policy to cover those damages would allow "the burden of the exemplary damages [to] fall entirely on the insurer and its policyholders, not on the tortfeasor" and would not serve either the punitive or deterrence-related purposes of exemplary damages under Texas law. *Id.* at 668. In fact, allowing Sanchez to be insured against the consequences of his own actions would frustrate the important public policy of punishing and deterring drivers who cause injury to others after choosing to drink and drive. As Cincinnati points out, Sanchez did not negotiate the insurance contract with Cincinnati, Advantage did; Sanchez did not pay the premium for the coverage afforded by the Policy, Advantage did. And Cincinnati did in fact pay Sanchez and Advantage's portion of the damages inasmuch as they were compensatory of Frederking's injuries. But the exemplary damages awarded against Sanchez in order to punish and deter his own grossly negligent conduct must be borne by Sanchez alone, not by his employer's insurer.

*Id.* at 9–10. Frederking now seeks reconsideration of the Court's order under Rule 59(e). ECF No. 56.

## DISCUSSION

### I.  Legal Standards

The Federal Rules of Civil Procedure do not provide for a "motion for reconsideration." Rather, such motions are typically construed as either a motion to alter or amend a judgment under Rule 59(e) or a motion for relief from judgment under Rule 60(b), depending on when the motion was filed. *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998). A motion such as Frederking's, filed within 28 days after the entry of the judgment, is considered under Rule 59(e). *Id.*

A Rule 59(e) motion "calls into question the correctness of a judgment" and "is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (internal citations omitted). In considering such a motion, a court must

3

balance "the need to bring litigation to an end" and "the need to render just decisions on the basis of all the facts." *Id.* at 479. Although courts have "considerable discretion" to grant or to deny a Rule 59(e) motion, *id.*, the rule favors denial. *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

A Rule 59(e) motion will be granted in limited circumstances: "(1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012). The only ground Frederking urges in his motion is "manifest error." ECF No. 46 at 2. To find such an error, the error must be "plain and indisputable" and one "that amounts to a complete disregard of the controlling law." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 311 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1037 (2018).

A Rule 59(e) motion "cannot be used to raise arguments which could, and should, have been made before the judgment issues." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990). "[S]uch a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 479. Nor can it be used to "relitigate old matters" that have already been resolved. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995)).

**II.   Analysis**

In moving for reconsideration, Frederking argues the Court committed two manifest errors when granting summary judgment in favor of Cincinnati:

> First, the Court's order improperly shifted the summary judgment burden of proof to Frederking to disprove Cincinnati's theory of law, when it was Cincinnati's

4

burden to prove Texas courts would adopt the novel position it advances here. Second, this Court improperly applied the *Fairfield* balancing test, instead adopting an unreported Fifth Circuit opinion that itself failed to apply this balancing test.

ECF No. 46 at 2.

    a. <u>Did this Court improperly shift the summary judgment burden?</u>

As to the first purported error, Frederking argues that Cincinnati did not carry its summary judgment burden to prove its affirmative defense based on Texas public policy, and that the Court improperly imposed a burden on Frederking to rebut that theory. *Id.* at 3.

Contrary to Frederking's arguments, Cincinnati met its summary judgment burden. The contours of the parties' burdens under Rule 56 are well-established, but the Court finds it necessary to repeat them here:

> Summary judgment is appropriate where the Court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." … The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment…. This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (Brennan, J., dissenting) (internal citations omitted). Frederking is of course correct that under Rule 56 Cincinnati was required to "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," FED. R. CIV. P. 56(a), and that the burden was on Cincinnati to establish the elements of its public policy defense. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) ("[I]f the movant bears the burden of proof on an issue…because…as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the…defense to warrant judgment in his favor.") (emphasis in original). Here, Cincinnati met that burden.

To meet its initial burden of production, Cincinnati was required to "make a *prima facie* showing that it is entitled to summary judgment." 10A C. Wright & A. Miller, *Federal Practice & Procedure* § 2727.1 (4th ed. 2020). Specifically, the elements of the public policy defense required Cincinnati to "consider the general public policies of Texas" and "weigh[] the interest in enforcing agreements versus the public policy interest against such enforcement." *Fairfield*, 246 S.W.3d at 655, 663. They did so, by successfully arguing the application of *Fairfield* to the undisputed facts in this case entitled them to judgment as a matter of law.[2] At that point, the summary burden judgment shifted to Frederking to "show[] that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Frederking failed to do so, and the parties seem to acknowledge that there are no genuine disputes of fact material to the public policy defense in this case.[3] The ultimate burden of persuasion, of course, remained with Cincinnati, and this Court explained its reasoning for being persuaded that in this case Texas public policy precludes the indemnification of the punitive damages award against Sanchez for his own grossly negligent conduct.[4] ECF No. 45 at 9 (applying *Fairfield* considerations to this case).

---

[2] Whether Texas public policy prohibits Cincinnati's insurance coverage of the punitive damages award against Sanchez is a "matter of law" for this Court, not a factfinder, to decide. *See Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex. 2006) ("[W]hether a contract…is contrary to public policy…is a question of law"); *Saks v. Sawtelle, Goode, Davidson & Troilo*, 880 S.W.2d 466, 471 (Tex. App.—San Antonio 1994, *writ denied*) (affirming trial court's grant of summary judgment based on finding that causes of action were barred by public policy as a matter of law). Frederking's true complaint with the Court's judgment, then, seems to lie with the Court's determination as a matter of law, not with any improper shift of the summary judgment burden. The purported "error" in this Court's application of *Fairfield* is addressed below in Section II(b).

[3] Frederking argues in his motion that "fact issues exist as to the scope of Sanchez's permission to use the vehicle at issue," which relates to whether Sanchez was an "insured" under the Policy but is irrelevant to the public policy defense. *See* ECF No. 46 at 2.

[4] Frederking argues that Cincinnati "cited no Texas Supreme Court case" holding that Texas public policy excused its compliance with a contractual obligation to pay the punitive damages at issue, "nor any intermediate Texas appellate case on this point." ECF No. 46 at 4. This argument is better put as an attack on the Court's determination as a matter of law, applying the *Fairfield* test, that Cincinnati was entitled to judgment based on its Texas public policy defense—even in the absence of an on-point opinion from the Texas Supreme Court. Any purported error in the Court's application of *Fairfield* is addressed in Section II(b).

The Court's observation that Frederking "fail[e]d to point the Court to any contrary precedent" was not an improper shift of the summary judgment burden. ECF No. 45 at 9. Rather, it was commentary on the ultimate reasons the Court was persuaded by Cincinnati's public policy defense: namely, that Cincinnati followed the Texas Supreme Court's formulation for evaluating the insurability of exemplary damages; Cincinnati pointed to the Fifth Circuit's own application of *Fairfield* to facts nearly identical to this case; and that the Court could not find (and Frederking failed to raise) any contrary precedent to persuade the Court otherwise. For all of these reasons, the Court's *Erie*-guess,[5] like the Fifth Circuit's in *Minter*, is that the Texas Supreme Court would hold the punitive damages award against Sanchez for his own grossly negligent conduct uninsurable in this case. There is no manifest error in the Court's imposition of the summary judgment burdens. The Court will not alter or amend its judgment on this basis.

      b.  <u>Did this Court improperly apply *Fairfield*?</u>

As to the second purported error, Frederking simply argues the Court incorrectly applied the *Fairfield* balancing test. ECF No. 46 at 4–5. In doing so, Frederking does nothing more than "rehash" arguments that were already raised and rejected by the Court. *See Templet*, 367 F.3d at 479. Frederking attacks the *Minter* court's holding, where the Fifth Circuit found on nearly identical facts to those presented here that the *Fairfield* factors precluded an employer's insurer from indemnifying an award of punitive damages against a grossly negligent employee. ECF No. 46 at 5 ("[S]ince *Minter*…totally failed to engage in this 'weighing' analysis…this Court's reliance

---

[5] Frederking implies by its motion that the Court failed to "make an *Erie* guess as to how the Texas Supreme Court would decide the question before [it]" and instead did "merely what [the Court thought] best." ECF No. 46. On the contrary, the Court faithfully applied Texas law as interpreted by Texas state courts, including the Texas Supreme Court in *Fairfield*, and considering the persuasive opinion of the Fifth Circuit doing the same in *Minter*. *See Hartford Cas. Ins. Co. v. Powell*, 19 F. Supp. 2d 678, 682 (N.D. Tex. 1998) ("*Erie* and its progeny require no more of a federal court than conscientiously to satisfy its duty to predict how the state court will decide a question.") (quoting *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 750 (5th Cir. 1995), *cert. denied*, 517 U.S. 1221 (1996)).

on *Minter* necessarily ported over that unreported case's analytical defects."). Frederking goes on to advocate for a different application of *Fairfield* in his case. ECF No. 46 at 5–7.

Contrary to Frederking's arguments, this Court did properly apply the *Fairfield* test. Where, as here, the legislature has not explicitly spoken, *Fairfield* requires a court determining the insurability of exemplary damages to "weigh[] the interest in enforcing agreements versus the public policy interest against such enforcement." *Fairfield*, 246 S.W.3d at 663. The Court did so and decided that the application of *Fairfield* to the facts of this case counsels against the insurability of punitive damages awarded against a drunk driver, where in the underlying trial the jury found the driver engaged in certain specific conduct.

Specifically, the Court found that Texas' general policy favoring freedom of contract, although "strong" is "not unbounded." ECF No. 45 at 7 (citing *Fairfield*, 246 S.W.3d at 664). The Court agreed with Cincinnati that the public policy in favor of freedom of contract is lessened in this case given the facts and the parties' positions. The parties to the contract—Cincinnati and Advantage—were bound by that contract. Cincinnati defended Advantage in the Underlying Lawsuit and paid to Frederking the damages assessed against Advantage. But the party whose grossly negligent conduct was at issue—Sanchez—was further attenuated from the contract. As the Court observed in its summary judgment order:

> Sanchez did not negotiate the insurance contract with Cincinnati, Advantage did; Sanchez did not pay the premium for the coverage afforded by the Policy, Advantage did. And Cincinnati did in fact pay Sanchez and Advantage's portion of the damages inasmuch as they were compensatory of Frederking's injuries.

ECF No. 45 at 10. These weakened policy considerations favoring enforceability of contracts are outweighed in this case by several strong public policies of Texas: policies that require exemplary damages to serve the purposes of punishment and deterrence, and that exemplary damages must

be borne by the wrongdoer; and policies that disfavor driving while intoxicated and that punish DWI offenders. *Id.* at 7–10.

Considering the specific facts of this case, the Court determined that under Texas law "the exemplary damages awarded against Sanchez in order to punish and deter his own grossly negligent conduct must be borne by Sanchez alone, not by his employer's insurer." *Id.* at 10. Frederking's arguments that "[b]alancing all these factors…can and should lead to a different result" is not sufficient to show the sort of "plain and indisputable" error required to support a Rule 59(e) motion. ECF No. 46 at 7; *Lyles*, 871 F.3d at 311. Frederking's motion does nothing more than rehash legal theories and arguments already advanced in opposition to summary judgment. The Court will not grant the "extraordinary remedy" of altering or amending its judgment on this basis. *Templet*, 367 F.3d at 479.

## CONCLUSION

For the reasons stated herein, Frederking's Motion for Reconsideration (ECF No. 46) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 20th day of May, 2020.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE